IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MUDBOTS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>ASCEND CONSTRUCTION SOLUTIONS, INC. and JORDAN CLARK,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND PARTIALLY GRANTING AND PARTIALLY DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT**<br><br>Case No. 2:24-cv-00913-JNP-DBP<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Dustin B. Pead |

Before the court is a Motion to Dismiss Counterclaims and a Motion for Leave to Amend Complaint filed by Plaintiff Mudbots, LLC ("Mudbots" or "Plaintiff" or "Counterclaim Defendant"). ECF Nos. 14 ("Pl.'s Mot. to Dismiss"), 25 ("Pl.'s Mot. to Amend").

Plaintiff brought this action in state court alleging breach of contract and tort claims against Defendants Ascend Construction Solutions, Inc. ("Ascend") and Jordan Clark ("Clark") (collectively, "Defendants" or "Counterclaimants"). Defendants removed the action to federal court and filed counterclaims for breach of contract, breach of the covenant of good faith and fair dealing, negligent misrepresentation, and fraudulent nondisclosure. ECF No. 9 ("Cntrclms."). Plaintiff moved to dismiss Defendants' counterclaims and to amend its complaint. For the reasons set forth herein, the court DENIES Plaintiff's Motion to Dismiss Counterclaims and PARTIALLY GRANTS and PARTIALLY DENIES Plaintiff's Motion for Leave to Amend Complaint.

## BACKGROUND[1]

Mudbots is a Utah-based limited liability company that manufactures concrete 3D printers used to build houses. Ascend is a construction corporation operating in Illinois. In 2023, Ascend began exploring the possibility of purchasing a 3D Concrete Printer for its construction projects. After researching 3D printers online, Jordan Clark, Ascend's owner, came across Mudbots. After registering to view online videos about the Mudbots technology, Clark was contacted by a Mudbots representative, Aaron Hoffman. Hoffman inquired whether Ascend would be interested in purchasing a Mudbots 3D Concrete Printer and Clark responded that Ascend would.

On September 21, 2023, Hoffman emailed Ascend three attachments: (1) the Printer Purchase Procedures, which purported to share all material information regarding the purchase of a 3D Concrete Printer, (2) a Product Catalog, and (3) the Nondisclosure Agreement. Hoffman explained that Ascend would need to sign the Nondisclosure Agreement before he could disclose more detailed information during a Zoom Call. Ascend complied and returned the signed copy of the Nondisclosure Agreement.

During the Zoom Call on October 10, 2023, Hoffman provided Ascend with preliminary information on how to buy a printer. He explained to Ascend that prior to purchasing a printer, Ascend would have to attend a two-day course in Utah, "Mudbots University." That same day, Hoffman emailed Ascend the materials that they had discussed, including a MudU charge authorization ("the Mudbots University Contract"). On November 15, 2023, Ascend signed the

---

[1] During oral argument, the parties noted several factual disputes. In summarizing the background of the case at this stage, the court takes Counterclaimants' well-pleaded facts as true, resolving all factual disputes in their favor. XMission, L.C. v. PureHealth Rsch., 105 F.4th 1300, 1307 (10th Cir. 2024).

Mudbots University Contract, authorizing a $4,000 payment for a 2-day training at Mudbots University.

On November 27, 2023, Clark attended another Zoom Call with Mudbots owner James Lyman Reusch ("Lyman"). During the call, Clark told Lyman that Ascend planned to use the 3D Concrete Printer for a duplex project and Lyman assured Clark that Mudbots had a 3D Concrete Printer ("the Printer") in stock that would meet Ascend's construction needs. During the call, Lyman also represented to Ascend that he would answer all questions about the 3D Concrete Printer at Mudbots University and disclose all material information about the transaction.

During the Mudbots University training in December, Lyman continued to represent to Ascend that Mudbots had the Printer in stock and encouraged Ascend to buy it. After completing the training, Ascend agreed to buy the Printer and gave Mudbots a check for $328,364 as a downpayment.

The next day, Mudbots employee, Tyler Wyatt, emailed Ascend an invoice for the printer which stated that the printer "will be governed by the conditions represented in the UNIVERSAL TERMS OF PURCHASE & TRAINING TERMS available at www.mudbots.com/terms/." Before Ascend received the invoice, Mudbots had never disclosed that the transaction would be subject to the Universal Terms of Purchase. Further, Ascend was unable to review the Universal Terms of Purchase because Mudbots never provided it with an access code. After receiving the invoice indicating that the purchase was subject to the Universal Terms of Purchase, which Ascend had been unable to review, and discovering that the Printer would not be in stock for weeks, Ascend stopped payment on the check.

Mudbots subsequently initiated this action alleging claims for breach of contract, fraudulent misrepresentation, common law fraud, detrimental reliance, and unjust enrichment.

Ascend then removed the action to federal court and filed counterclaims for (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) negligent misrepresentation, and (4) fraudulent nondisclosure. Cntrclms. ¶¶ 91-145.

## DISCUSSION

The court first addresses Plaintiff's Motion to Dismiss Counterclaims. It then turns to Plaintiff's Motion for Leave to Amend its Complaint.

### I.  MOTION TO DISMISS COUNTERCLAIMS

Counterclaim Defendant moves for dismissal of counterclaims under Rule 12(b)(6). It argues that Counterclaimants' first two counterclaims, breach of contract and breach of the covenant of good faith and fair dealing, fail as a matter of law because Counterclaimants do not identify a contract. It then argues that Counterclaimants' third and fourth counterclaims are barred by the economic loss doctrine. Finally, Counterclaim Defendant argues that Counterclaimants failed to adequately plead tort claims. The court addresses each issue below.

#### A. Legal Standard

The court may dismiss any action that fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In evaluating a motion to dismiss under Rule 12(b)(6), the court takes the plaintiff's well-pleaded facts as true, drawing all inferences in the plaintiff's favor. *See Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006); *see also Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's [] complaint alone is legally sufficient to state a claim for which relief may be granted." (internal quotation marks omitted)). But the plaintiff must allege some facts, not just legal conclusions, to support that inference. *See Anupama Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019).

4

"Pleadings that do not allow for at least a reasonable inference of the legally relevant facts are insufficient." *Id.*

    B.  Breach of Contract

To make a prima facie case for breach of contract, a plaintiff must allege "(1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Espenschied Transp. Corp. v. Fleetwood Servs.*, 422 P.3d 829, 833 (Utah 2018) (internal quotation marks omitted). Counterclaim Defendant argues that Counterclaimants failed to allege "the existence of any contract that would require Mudbots to pay any damages after Ascend attended Mudbots' two-day training." Pl.'s Mot. to Dismiss at 4.

First, in its counterclaim, Ascend pleads the existence of a Mudbots University Contract. Cntrclms. ¶ 34. Mudbots argues that a purchase contract did not exist at the time, only a contract to provide training. It is undisputed that there was no purchase contract at this time. But what the parties promised under the Mudbots University Contract is a factual dispute. Counterclaimants allege that under this contract, it paid Mudbots $4,000 in exchange for Mudbots training and disclosure of all material information about the purchase of a 3D Mudbots printer. *Id.* ¶ 35. The court must take Counterclaimants well-pleaded facts as true. *Moore*, 438 F.3d at 1039. Thus, Counterclaimants allege the existence of a contract.

Second, Ascend alleges that it performed under the contract by paying Mudbots $4,000. And Mudbots does not dispute this fact. Thus, Ascend meets the second element for its breach of contract claim.

Third, Ascend alleges that Mudbots breached the Mudbots University Contract by failing to disclose all material information. Specifically, it claims that Mudbots failed to disclose the

Universal Terms of Purchase and a list of required trainings. Ascend has therefore met the third element for breach of contract.

Mudbots replies that it had no duty to disclose the terms of a future purchase contract before negotiating and accepting it, arguing that Ascend has provided no legal basis for such a duty. But Ascend alleges that the legal basis for Mudbots' duty to disclose derives from its dealings prior to the alleged purchase contract. Ascend claims that Mudbots agreed in the Mudbots University Contract to fully disclose all material information. It also alleges Ascend signed multiple nondisclosure agreements in reliance on Mudbots' agreement to disclose all material information about purchasing a 3D printer. Thus, Counterclaimants have provided a sufficient factual basis from which a jury may infer that Mudbots had a duty to disclose under an existing contract.

Finally, Ascend alleges that it was damaged by Mudbots' breach of the contract. Ascend seeks recovery of the $4,000 it paid under the contract to attend the training as well as travel expenses incurred for Ascend to attend Mudbots University. It also claims that Mudbots' breach caused the cancellation of its intended duplex project, resulting in damages. Finally, it alleges that Mudbots' breach proximately caused it to pay $328,364, which, Ascend argues, is recoverable if the jury determines Mudbots is entitled to recover that amount from Ascend.

Mudbots admits that Ascend paid it $4,000 but argues Ascend cannot recover those damages because Mudbots gave Ascend the requisite training. But Ascend alleges that the contract required more than the training; it required Mudbots to disclose all material information relating to the purchase of its printers. Therefore, Ascend alleges damages to meet the last element of its breach of contract claim.

In taking all Counterclaimants' factual allegations as true, the court finds that Ascend has sufficiently alleged a prima facie case for breach of contract. Accordingly, the court denies Plaintiff's motion to dismiss the breach-of-contract counterclaim.

C. *Economic Loss Doctrine*

Counterclaim Defendant next argues that Counterclaimants' claims for fraudulent nondisclosure and negligent misrepresentation are barred by the economic loss doctrine. "[T]he economic loss rule prevents parties who have contracted with each other from recovering beyond the bargained-for risks." *Sunridge Deve. Corp. v. RB&G Eng'g, Inc.*, 230 P.3d 1000, 1006 (Utah 2010). Under this rule, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *KTM Health Care Inc. v. SG Nursing Home LLC*, 436 P.3d 151, 169 (Utah Ct. App. 2018) (internal quotation marks omitted).

To determine whether an independent duty exists, a court must ask "whether the contract covers the subject of the tort claims—or in other words whether the basis for the plaintiff's tort claims is distinct and separable from the basis for the contract claims." *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 435 P.3d 193, 196 (Utah 2018). But here, the alleged Mudbots University Contract is not before the court, and the parties dispute whether a contract ever existed. Thus, it is impossible to determine whether the contract covers the subject of the tort claims. In fact, in moving to dismiss Counterclaimants' breach-of-contract claim, Counterclaim Defendant argues that the Mudbots University Contract does not cover the subject torts. *See* Pl.'s Mot. to Dismiss at 5 ("Assuming Counterclaimant[s] ha[ve] demonstrated the existence of any contract, the contract is alleged in the Counterclaims to be a contract for two-day training which could lead to the negotiated purchase of a printer, both of which conditions the Counterclaims assert were

7

fulfilled."). Accordingly, at this stage in the litigation, the court cannot determine whether the economic loss rule applies.

Counterclaim Defendant argues that the tort counterclaims should be dismissed because Counterclaimants allege that "a contract with Mudbots that covered the subject matter and relevant duties in this suit was in place." *Id.* But dismissing the tort claims on these grounds would deprive Counterclaimants of their right to allege claims in the alternative. *See* FED. R. CIV. P. 8(a)(3) ("[A] demand for the relief sought, which may include relief in the alternative or different types of relief."); *see also id.* at (d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").

In the alternative, Counterclaimants allege that Mudbots' duty to disclose and duty to not mislead do not overlap with the duties contemplated in the Mudbots University Contract. In viewing these facts in the light most favorable to the nonmoving party, the court finds the counterclaims for negligent misrepresentation and fraudulent nondisclosure are not barred by the economic loss rule.

    *D. Adequacy of Tort Pleadings*

Counterclaim Defendant also argues that Counterclaimants failed to adequately plead negligent misrepresentation and fraudulent nondisclosure. Specifically, it argues that Ascend failed to (1) plead with particularity, (2) plead damages, and (3) allege any false statements or scienter. The court addresses each argument below.

    1)      Plead with Particularity

First, Counterclaim Defendant argues that Counterclaimants failed to plead negligent misrepresentation and fraudulent nondisclosure with particularity. The court disagrees.

To plead negligent misrepresentation, Ascend must allege that (1) Mudbots made a "careless or negligent misrepresentation of a material fact" (2) about a transaction that it "had a pecuniary interest in," (3) Mudbots "was in a superior position to know the material fact" (4) Mudbots "should have reasonably foreseen that [Ascend] was likely to rely upon the fact," and (5) Ascend was injured by reasonable reliance upon that misrepresentation. *Price-Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.* 713 P.2d 55, 59 (Utah 1986). "Although the cause of action for negligent misrepresentation grew out of common law fraud, the elements of fraud need not be independently established." *Id.* at 59 n.2. Thus, Counterclaimants must only establish the elements for negligent misrepresentation.

Here, Ascend alleges the following: Mudbots made misrepresentations that (1) the Printer Purchase Procedures document included all material information about the Printer purchase and (2) the Printer was in stock. Cntrclms. ¶¶ 22-23, 49-50. Ascend relied on those representations when it decided to purchase the Printer. *Id.* ¶ 136. Mudbots had a pecuniary interest in the transaction and more information than Ascend about the Printer. *Id.* ¶¶ 115-116. Mudbots should have foreseen that its failure to disclose that information would cause Ascend to rely upon those misrepresentations. And Ascend was injured by the misrepresentation when it was coerced to write out a check for $328,364 and thereafter forced to cancel the Printer order and its commitment to complete its scheduled duplex project. *Id.* ¶ 83, 136. Thus, Counterclaimants sufficiently allege facts to support a claim for negligent misrepresentation.

To adequately plead fraudulent nondisclosure, Ascend must allege (1) Mudbots "had a legal duty to communicate information," (2) Mudbots "knew of the information [it] failed to disclose," and (3) "the nondisclosed information was material." *Anderson v. Kriser*, 266 P.3d 819, 823 (Utah 2011). Counterclaimants allege that (1) Mudbots had a common law duty to disclose

9

that the Universal Terms of Purchase would apply to the Printer purchase, (2) Mudbots knew that the Universal Terms of Purchase existed and would apply to the transaction, and (3) Mudbots failed to disclose the existence of the Universal Terms of Purchase until after Ascend had given Mudbots a check for the Printer deposit. Here, Counterclaimants do more than "merely recite the elements of fraud." *State v. Apotex Crop.*, 282 P.3d 66, 73 (Utah 2012). They allege facts to support each element of a fraudulent nondisclosure claim.

    Counterclaim Defendant then argues that Counterclaimants' entire tort theory is based on Mudbots' failure to disclose the Universal Terms of Purchase. It argues that Mudbots' failure to disclose these terms is immaterial because Ascend admitted it received documents referencing the Universal Terms of Purchase prior to Mudbots University and signed the invoice incorporating the Universal Terms of Purchase, thus ratifying the contract. Pl.'s Mot. to Dismiss at 11.

    As an initial matter, Counterclaim Defendant mischaracterizes the counterclaims. Counterclaimants also allege that Mudbots failed to disclose that Mudbots required additional training before it would release the Printer, and that the Printer was not in stock as Mudbots had represented. Cntrclms. ¶¶ 77-79, 83. But even if Counterclaimants' entire theory were based on the failure to disclose the Universal Terms of Purchase, the court still finds Counterclaim Defendant's arguments unpersuasive. First, Counterclaimants allege that the only notification they received about the Universal Terms of Purchase before handing over the check was a misleading statement that implied those terms only applied to master dealers and Ascend had no plan to be a master dealer. Second, Mudbots only disclosed Universal Terms of Purchase *after* Ascend had already handed Mudbots a check for the Printer. And third, Ascend's signature on the invoice does not mean a valid contract existed. Indeed, Counterclaimants argue that the Universal Terms of Purchase are unconscionable and thus unenforceable. Ascend also claims that it could not access

the Universal Terms of Purchase because Mudbots never provided it with an access code. And if Mudbots never disclosed the Universal Terms of Purchase to Ascend, it raises a question as to whether the parties could have reached a meeting of the minds on the material terms of the purchase contract.

As a final note, the purpose of the particularity requirement is to give adequate notice to the defendant of what the claims entail. Counterclaimants argue that "MudBots cannot credibly claim Ascend's Counterclaim fails to give notice of who made misrepresentations, when they were made, the contents of those misrepresentations, and the consequences." ECF No. 26 ("Defs.' Opp.") at 10-11. The court agrees. The counterclaims include names, dates, time, and statements made by Mudbots and its representatives, explanations for why those statements were misleading, and how Ascend was injured by those misrepresentations or failures to disclose.

### 2) Failure to Plead Damages

Counterclaim Defendant also argues that Counterclaimants have pled no damages because it "stopped payment on its nonrefundable deposit and has paid nothing under the purchase contract." Pl.'s Mot. to Dismiss at 8. But Ascend also alleges that it spent $4,000 and travel expenses to attend the Mudbots University course in Utah and was ultimately unable to complete its scheduled duplex project because of Mudbots' fraudulent nondisclosure and negligent misrepresentation. Thus, Counterclaimants adequately allege damages for their tort claims.

### 3) Failure to State an Actionable False Statement

Finally, Counterclaim Defendant presents several arguments relating to Counterclaimants' fraud allegations. First, they argue that Counterclaimants do not allege a misrepresentation of a "presently existing fact." The court disagrees. Counterclaimants allege that Mudbots knew of the existence of the Universal Terms of Purchase and that those terms would apply to the transaction

but failed to disclose their existence. The allegation is not that the Universal Terms of Purchase were later presented. The allegation is that the Universal Terms of Purchase always existed and Mudbots failed to disclose them.

Next, Counterclaim Defendant argues that the counterclaims make no allegations of scienter. The court disagrees. Counterclaimants clearly state, "MudBots knew it intended to enforce the [Universal Terms of Purchase] before collecting the $328,364.00 check on December 14, 2023." Cntrclms. ¶ 121. Finally, Counterclaim Defendant argues that Counterclaimants have not met the standard for knowing or reckless misrepresentation. But the holding Counterclaim Defendant cites from *Rawson v. Conover* is referring to fraudulent misrepresentation, not negligent misrepresentation. 20 P.3d 876 (Utah 2001). In fact, the court affirmed that "[n]egligent misrepresentation occurs when a person supplies false information for the guidance of others in their business transactions, if the person supplying the information *failed to exercise reasonable care* or competence in obtaining it." *Id.* at 883 (emphasis added). Thus, the standard for a negligent misrepresentation claim is negligence, not reckless or knowing.

Accordingly, Counterclaimants adequately plead claims for fraudulent nondisclosure and negligent misrepresentation. Thus, the court DENIES Counterclaim Defendant's Motion to Dismiss Counterclaims.

II.     MOTION TO AMEND COMPLAINT

Next, Plaintiff moves for leave to amend its complaint, providing two reasons: (1) to clarify the amount of the deposit Defendants paid for the Printer and (2) to add an alter ego theory to its breach of contract claim. But the Amended Complaint attached to Plaintiff's motion includes more changes than those articulated in its motion. For example, Plaintiff also adds a conversion claim

against Clark as well as a constructive trust and provisional remedies cause of action against both Defendants.

Defendants do not object to the amendment of Plaintiff's complaint to clarify the deposit amount. Thus, the court will grant Plaintiff leave to amend its complaint to clarify the deposit amount. But Defendants do object to the addition of the alter ego theory, which give rise to all of the claims alleged against Clark in his individual capacity.[2] Defendants oppose these amendments on grounds of futility and lack of good faith. In its reply, Plaintiff fails to respond substantively to any of Defendants' legal arguments regarding futility. Rather, it complains that Defendants improperly treat their opposition as a motion to dismiss. As explained below, however, this is exactly what Defendants must do when opposing a motion for leave to amend on grounds of futility.[3]

A. Legal Standard

Because 21 days have passed since Defendants filed their answer, Plaintiff "may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15 (a)(2). Although "[t]he court should freely give leave when justice so requires," leave to amend is within the court's discretion. *Id.*; *see also Warnick v. Cooley*, 895 F.3d 746, 755 (10th Cir. 2018). "A district court may deny leave to amend upon a showing of undue delay, undue prejudice to the

---

[2] Defendants note that they only address whether Plaintiff states a claim against Clark as an individual but reserve the right to address Plaintiff's claims against Ascend in a future 12(b)(6) motion.

[3] Because the court denies the motion for leave to add alter ego claims on the basis of futility; the court does not reach Defendants' good faith argument.

opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Warnick*, 895 F.3d at 755 (internal quotation marks omitted).

"An amendment is futile if, as amended, [it] would be subject to dismissal." *Johnson v. Metro. Prop & Cas. Ins. Co.*, 97 F.4th 1223, 1232 (10th Cir. 2024). Under Rule 12(b)(6), the court may dismiss a complaint that fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Because Defendants made a futility argument, the court's analysis of Plaintiff's motion is the same as if Defendants had filed a Rule 12(b)(6) motion to dismiss the proposed amended complaint.

*B. Alter Ego Theory*

In its Amended Complaint, Plaintiff alleges six claims against Clark in his individual capacity: (i) Alter Ego, (ii) Fraudulent Misrepresentation, (iii) Detrimental Reliance, (iv) Conversion, (v) Unjust Enrichment, and (vi) Constructive Trust and Provision Remedies.

As an initial matter, the court agrees with Defendants that Utah law applies to Plaintiff's alter ego theory. In a diversity action, the Tenth Circuit "appl[ies] the conflict-of-laws rules of the forum state." *Kipling v. State Farm. Mut.*, 774 F.3d 1306, 1310 (10th Cir. 2014). Because Utah is the forum state, Utah's choice-of-law rules apply.

Utah has adopted the "most significant relationship" test. Under that test, a court should consider: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the . . . place of incorporation and place of business of the parties." *One Beacon Am. Ins. Co. v. Huntsman Polymers Corp.*, 276 P.3d 1156, 1165 (Utah Ct. App. 2012). Utah has the most significant relationship to the dispute because the parties negotiated and allegedly contracted in Utah and the

subject of the dispute, the Printer, was in Utah. Accordingly, the court applies Utah law to Plaintiff's alter ego theory.

Under Utah law, "alter ego" is not a claim for relief but rather a theory of liability. *See Bushnell v. Barker*, 274 P.3d 968, 971 (Utah 2012). Therefore, Plaintiff may not assert a claim for alter ego. However, as Plaintiff clarified, "the breach of contract claim, while still being asserted against both Defendants, is asserted directly against Ascend Construction Solutions and against its owner, Jordan Clark, as the alter ego [in the Amended Complaint]." Pl.'s Mot. to Amend at 2. Accordingly, the court considers whether the Amended Complaint states a claim for breach of contract against Clark under an alter ego theory of liability.

Defendants argue that Plaintiff fails to allege sufficient facts to support a theory for alter ego and therefore the breach-of-contract claim against Clark, in his individual capacity, would be subject to dismissal.[4] Plaintiff alleges that Ascend is the alter ego of Clark because they comingled funds. To support this inference, Plaintiff must allege some facts, not just legal conclusions. *See Anupama Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019). "Pleadings that do not allow for at least a reasonable inference of the legally relevant facts are insufficient." *Id.* Defendants argue that the only factual allegation Plaintiff provides in its Amended Complaint is the existence of one letter from Ascend's bank. The court agrees.

In the Amended Complaint, Plaintiff alleges that it received a letter of credit from Defendants' bank on November 15, 2023, and that the letter "specifically identifies Clark as the buyer and the party having cash on hand 'available to fund the purchase of the 3D printer.'" ECF

---

[4] Defendants also argue that all individual claims against Clark rely on Plaintiff's alter ego theory. The court will address those claims separately in the sections below.

No. 25-1 ("Am. Compl.) ¶¶ 14, 16. The rest of the allegations purporting to describe the letter are merely legal conclusions lacking any factual support. *See, e.g.*, ¶¶ 15, 17, 30-35 (alleging that Ascend failed to maintain corporate formalities, Defendants comingled funds, and Clark has not adequately funded Ascend). Thus, the court may only consider whether the letter identifying Clark as the buyer and the party having cash on hand is sufficient to support an inference that Clark and Ascend comingled funds. It is not. No reasonable juror could infer from that letter that Defendants comingled funds. Thus, the letter provides no factual basis to support Plaintiff's alter ego theory against Clark. And without any factual support, Plaintiff may not amend its complaint to assert a claim against Clark under an alter ego theory of liability.

Absent an alter ego theory, Clark may be individually bound by a contract if he signed the contract in his personal capacity. *Anderson v. Gardner*, 647 P.2d 3 (Utah 1982) (holding that the defendant was personally bound by the contract because "[t]he contract names the defendant as purchaser, and he personally signed it without indicating that he was an agent acting for a principal."). But Mudbots' proposed Amended Complaint does not allege that Clark signed the contract in his individual capacity. Thus, Mudbots may not assert a claim for breach of contract against Clark in his individual capacity absent an alter ego theory.

C. Detrimental Reliance and Constructive Trust Claims

Defendants next argue that Plaintiff's claims for detrimental reliance and constructive trust should be dismissed because they are not recognized as causes of action. The court agrees. Detrimental reliance is not a recognized cause of action, but rather an element of promissory estoppel. *Cottonwood Improvement Dist. v. Qwest Corp.*, 296 P.3d 754, 755-56 (Utah Ct. App. 2013). Accordingly, Plaintiff may not amend its complaint to add detrimental reliance as a stand-alone claim.

Constructive trust is also not a cause of action, but rather a remedy in equity. "A constructive trust arises by operation of law to prevent unjust enrichment." *Lodges at Bear Hollow Condo. Homeowners Ass'n v. Bear Hollow Restoration, LLC*, 344 P.3d 145, 153 (Utah Ct. App. 2015). The court denies Plaintiff leave to amend the complaint to add constructive trust as a cause of action. But Plaintiff may seek this remedy under its unjust enrichment claim.

### D. Conversion and Unjust Enrichment Claims Against Clark

Defendants next argue that the conversion and unjust enrichment claims against Clark should be dismissed because Plaintiff does not allege that Clark received any personal benefit from Mudbots. To recover on a claim for conversion of money against Clark, Plaintiff must allege that Clark wrongfully received the money. *Jones v. Salt Lake City Corp.*, 78 P.3d 988, 992 n.4 (Utah Ct. App. 2003) ("Although money may be the subject of conversion, it is so only when the party charged wrongfully received it."). Plaintiff alleges that Clark stopped payment on a check from Ascend intended to pay for the Printer. But Clark took that action in his capacity as an agent for Ascend. He did not receive the money from the check himself. Rather, the funds remained in Ascend's account. The alleged benefit Clark received from stopping payment on this check relies on Plaintiff's alter ego theory – that Clark and Ascend comingled funds. For reasons stated above, Plaintiff has not alleged facts sufficient to support that claim. Thus, Plaintiff fails to allege any facts to support the inference that Clark wrongfully received money from Mudbots.

Similarly, "[t]o recover on a claim for unjust enrichment, a plaintiff must establish . . . a benefit conferred on one person by another . . . ." *Espinoza v. Gold Cross Servs.*, 234 P.3d 156, 159 (Utah Ct. App. 2010). Without a basis for an alter ego theory, Plaintiff points to no facts to demonstrate Clark independently received a benefit from stopping payment on the check.

17

Accordingly, the court denies Plaintiff leave to add conversion and unjust enrichment claims against Clark because such amendment would be futile.

### E. Fraudulent Misrepresentation Claim Against Clark

Finally, Defendants argue that Plaintiff fails to state a claim for fraudulent misrepresentation against Clark because it fails to identify any alleged misrepresentation made by Clark. To state a claim for fraudulent misrepresentation, Plaintiff must allege

> (1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage.

*Larsen v. Exclusive Cars, Inc.*, 97 P.3d 714, 716 (Utah Ct. App. 2004). As Plaintiff noted in its motion to dismiss, fraud must be plead with particularity. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). To plead with particularity, Plaintiff "must set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1254 (10th Cir. 2016). The plaintiff must identify "each fraudulent statement, explain why the statement was misleading, and allege with particularity his basis for believing that the statement was false." *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1147 (10th Cir. 2015).

Almost all the factual allegations supporting Plaintiff's fraud claim are made collectively against "Defendants." There is only one allegation in which Plaintiff specifically identifies Clark as making a misrepresentation. The court will only consider this statement because, to plead with

particularity, Plaintiff must allege the "identity of the party making the false statements." *George*, 833 F.3d at 1254; *see also Seattle-First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986) (holding that, to plead fraud with particularity, "plaintiffs should identify particular defendants with whom they dealt directly . . . ."). Thus, statements alleged against Defendants as a whole fail to plead with particularity.

Plaintiff alleges that "Clark represented to Mudbots that he personally was interested in a purchase." Am. Compl. ¶ 13. But Plaintiff fails to allege that Clark's representation was false at the time he made the representation. Further, there is no allegation of scienter, that Clark knew the representation was false or that he made the representation recklessly. Thus, Plaintiff's claim for fraud against Clark is woefully insufficient as a matter of law.

\*   \*   \*

The court PARTIALLY GRANTS and PARTIALLY DENIES Plaintiff's Motion to Amend its Complaint. Plaintiff may amend the complaint to correct the amount of the deposit Defendants paid. Amendment of the complaint to include claims for alter ego, detrimental reliance and constructive trust against any defendant is futile because these claims are not causes of action. Amendment of the complaint to include claims for breach of contract, conversion, unjust enrichment, and fraudulent misrepresentation against Clark in his individual capacity is futile for reasons discussed above.

## CONCLUSION AND ORDER

The court DENIES Plaintiff's Motion to Dismiss Counterclaims (ECF No. 14) and PARTIALLY GRANTS and PARTIALLY DENIES Plaintiff's Motion for Leave to Amend Complaint (ECF No. 25).

DATED August 25, 2025

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge